IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES WIDTFELDT, and JAMES WIDTFELDT TRUST, | ) ) ) | |
| Plaintiffs, | ) ) | 8:05CV49 |
| v. | ) ) ) | |
| MICHAEL JOHANNS, UNITED STATES DEPARTMENT OF AGRICULTURE, MONTE FLETCHER, RICHARD KILMURRY, BONNY KILMURRY, HILGER BROTHERS PARTNERSHIP, GARY A. BURIVAL, JOYCE A. BURIVAL, and EDWIN BURIVAL, | ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

Plaintiff, James Widtfeldt, filed this action seeking judicial review of a final agency determination by the National Appeals Division (NAD) of the United States Department of Agriculture (USDA) concerning a determination by the Farm Services Agency (FSA) that plaintiff owes the Commodity Credit Corporation (CCC) approximately $29,106, plus interest in overpayments. Plaintiff received program payments for crop years 2000 and 2001, but was later determined ineligible under program requirements. The parties have filed cross-motions for summary judgment based on the Administrative Record of the United States Department of Agriculture. (Filing Nos. 33 and 41.) For the reasons stated below, the court finds that the National Appeals Division of the United States Department of Agriculture did not abuse its discretion.

**FACTUAL BACKGROUND**

The USDA is responsible for administering all statutes and regulations pertaining to the CCC, the Production Flexibility Program ("PFP"), and the FSA. The PFP was created as part of the Agricultural Market Transition Act Title I of the Federal Agriculture

Improvement and Reform Act of 1996 to provide producers of certain crops with declining, yearly monetary assistance (referred to as production flexibility payments) over a period of seven years while phasing out traditional commodity price supports.  *See generally* Christopher R. Kelley, *Recent Federal Farm Program Developments*, 4 Drake J. Agric. L. 93, 99 (1999).  Accordingly, the CCC entered into seven-year contracts with eligible producers in return for annual market assistance payments.  See 7 U.S.C. §§ 7211-7212 (2002). & 7 C.F.R. § 1412.201(a) (2002).  The PFP is administered under the general supervision of the CCC and carried out by state, county, or area FSA committees. Enrollment in the PFP was limited to a relatively short time period between April 4 and August 1, 1996.  *See* 7 U.S.C. § 7212(a)(1) & (2).

The Market Loss Assistance ("MLA") Program was first enacted in 1998 and its purpose was to supplement the PFP payments producers received.  7 U.S.C. § 1421. Program payments were linked to the eligibility for Production Flexibility Contracts (PFC). 7 U.S.C. § 1421.

Plaintiff James Widtfeldt owns and leases farmland in Holt County, Nebraska.  On May 2, 2000, plaintiff executed a Form CCC-478 PFC where he identified himself as replacing Gusteva Widtfeldt as the producer on Farm Serial Number 3628 (FSN 3628). (Administrative Record at 176, 181.)  In his designation of program payments, plaintiff claimed 100 percent interest in the FSN 3628 Production Flexibility acres for both the 2000 and 2001 crop years.  Between May 25, 2001, and August 21, 2001, plaintiff received around $29,106 in PFC and MLA payments.  *Id.* at 160.

In 2000 and 2001, plaintiff, as trustee for the Albert Widtfeldt Trust, entered into three leases for FSN 3628.  The first set of leases for the years 2000 and 2001 was with the Hilger Brother Partnership, the leases were signed only by the Hilger Brothers Partnership. (Administrative Record at 68-71). Under the terms of these leases, the Hilger Brothers Partnership agreed to pay plaintiff $10,000 annually while plaintiff paid for the

maintenance of the irrigation system. (Administrative Record at 68-71, Testimony from James Widtfeldt on hearing Tapes 1 and 2.) The leases also stated that plaintiff would retain all government payments from the property. *(*Administrative Record at 69 and 71.)

Next, plaintiff entered into a lease with Richard and Bonnie Kilmurry for 2001 and 2002. Under the terms of this lease, the Kilmurrys paid $24,500 annually to plaintiff. (Administrative Record at 72-74.) The Kilmurrys were also responsible for the farm operating costs. *Id.* The lease stated that plaintiff would retain all government payments from the property. *Id* at 73-74. This lease was signed by both parties. *Id.*

The final lease was with Gary, Joyce and Edwin Burival. The parties entered into two separate but identical leases for the years 2000 and 2001. (Administrative Record at 62-67.) The lease for the year 2000 was not signed by either parties, and the lease for 2001 was signed only by the Burvivals. (Administrative Record 65, 67.) Under the terms of this lease, the Burivals agreed to pay plaintiff $11,000 annually. The Burivals paid for all of the operating costs, while plaintiff paid for maintenance costs on the irrigation equipment and purchased a new irrigation system. (Administrative Record at 379, 519, testimony from James Widtfeldt on Hearing Tapes 2 and 3.) This lease also stated that plaintiff was to receive all government payments on the leased properties. (Administrative Record at 63, 66.)

On November 19, 2003, the FSA's County Executive Director requested that plaintiff provide evidence to show that he was eligible to earn the PFC and MLA payments for crop years 2000 and 2001. (Administrative Record at 172.) A hearing was held to determine plaintiff's eligibility, and on January 28, 2004, FSA notified plaintiff that it determined he was ineligible for the 2000 and 2001 PFC and MLA payments and requested that the payments be refunded. (Administrative Record at 160.) This determination was made based on the FSA's conclusion that plaintiff lacked the risk in the crop production on his farm. On February 23, 2004, plaintiff requested FSA to reconsider its decision.

3

(Administrative Record at 261.) On July 30, 2004, FSA affirmed its January 28, 2004, decision. (Administrative Record at 472.) On August 10, 2004, plaintiff appealed the FSA's decision to the National Appeals Division of the United States Department of Agriculture arguing that plaintiff shared in the risk of the production of the crops in 2000 and 2001. The NAD Hearing Officer upheld the FSA's determination. (Administrative Record at 473.) On November 15, 2004, plaintiff filed a request for a Director Review of the NAD's Hearing Officer's determination issued on October 29, 2004, and requested equitable relief. (Administrative Record at 485.) In its review the Director framed the issue before him as whether the FSA complied with its regulations when it determined that appellants were required to refund PFC and MLA payments, explaining that it needed to answer the specific questions: (1) did plaintiff's lease agreements with Third Parties cause appellants to be ineligible for 2000 and 2001 PFC and MLA payments; and (2) have appellants established a basis for equitable relief. (Administrative Record at 471.) After reviewing the applicable regulations and relevant facts, the Director concluded that the FSA's determination that plaintiff was ineligible for program payments both because the leases between plaintiff and the third parties were cash leases and because there was no basis for equitable relief were not erroneous. The plaintiff now seeks review of this decision.

## DISCUSSION

### A. Jurisdiction

Based on the foregoing discussion, the court finds that plaintiff, Widtfeldt, has exhausted his administrative remedies. See 7 U.S.C. § 6912(e). This court has jurisdiction pursuant to 28 U.S.C. § 1331, 7 U.S.C. § 6999, and 28 U.S.C. § 2201.[1]

---

[1] It is of note that in plaintiff's complaint he makes reference to program payments for the years 2002-2006; however, plaintiff has already appealed a decision challenging his 2002 program payments to the District Court and this claim was dismissed with prejudice. (Administrative Record at 452-460.) Further, plaintiff did not exhaust his administrative remedies with respect to any program payments for the years 2003-2006. Therefore, this court will only address the decision regarding the 2000 and 2001 overpayments.

**B. Standard of Review**

    **1. Summary Judgment**

Summary judgment is proper if no disputed issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where unresolved issues are primarily legal as opposed to factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d at 1326.

    **2. Administrative Procedure Act**

The decision by the NAD Director is reviewed under the Administrative Procedure Act (APA). *See Lane v. United States Department of Agriculture*, 120 F.3d 106, 108-09 (8th Cir. 1997). The APA, at 5 U.S.C. § 706, sets out the scope of review:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall–
>     (1) compel agency action unlawfully withheld or unreasonably delayed; and
>     (2) hold unlawful and set aside agency action, findings, and conclusions found to be–
>         (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>         (B) contrary to constitutional right, power, privilege, or immunity;
>         (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

>   (D) without observance of procedure required by law;
>   (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>   (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

Agency action is arbitrary and capricious only where it is not supportable on any rational basis. *First Nat'l Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974), *cert. denied*, 421 U.S. 930 (1975); *Churchill Truck Lines, Inc. v. United States*, 624 F.2d 63, 65 (8th Cir. 1980). "The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

### C. Applicable Statutes and Regulations

The Federal Agriculture Improvement and Reform Act of 1996, 7 U.S.C. § 7201 *et seq.,* allowed producers on farms with wheat, corn, barley, grain, sorghum, oats upland cotton and rice crop acreage bases the opportunity to enter into PFCs. The Market Loss Assistance program allowed producers eligible for PFCs to receive MLA payments. However, as a prerequisite to receiving payments under these programs a landowner must meet the eligibility requirements. When a landowner leases his land, he is eligible to receive PFC and MLA payments as outlined in 7 C.F.R. § 1412.202(a)  The relevant language provides that an owner of a farm is "eligible to enter into a contract [if he or she]. . . (a) assumes all or part of the risk of producing a crop." 7 C.F.R. § 1412.202(a). 7 C.F.R. § 1412.303(a)(5) provides that "If the lease is a cash lease, the landlord is not eligible for a contract payment." The applicable regulations define a cash lease as follows: "if the lease provides for only a guaranteed sum certain cash payment, or a fixed quantity of the crop (for example, cash, pounds, or bushels per acre)." 7 C.F.R. § 1412.303(a)(2). By contrast, a share lease is defined as "a lease [that] contains provisions that require the

6

payment of rent on the basis of the amount of crop produced or the proceeds derived from the crop, or the interest such producer would have had if the crop had been produced, or combination thereof." 7 C.F.R. 1412303(a)(3).

### D. Agency Determination

The Director determined that plaintiff was ineligible for the program payments because he leased his farmland based on cash leases.

Plaintiff's arguments challenging this determination are not persuasive. Plaintiff first argues that because the leases stated that the PFC and MLA payments should be distributed to him "the lease is and should be the final word as to the matter." This is simply not the case. Plaintiff's lease must meet the statutory and regulatory authority governing program payments and cannot contract around these guidelines. Plaintiff received program payments for farmland that was leased to three separate parties. Each lease contained a set amount plaintiff would receive in dollars for the use of the land. Nowhere in the leases did plaintiff condition the amount of money received on the risk of crop production. Furthermore, other than simply stating the leases speak for themselves, plaintiff has failed to set forth any legal argument challenging the Director's determination that plaintiff lacked the necessary risk for program eligibility.

Next, plaintiff argues that because the USDA allowed him to sign up for the program payments, as a matter of equity he is entitled to the payments based on Mistake. The Director reasoned that relief could be available if the producer relied on, and took action based on, information from an agency representation that was false. But here there is no evidence in the record, nor does plaintiff point to any facts in the record that support an argument that he believed he was entitled to the program payments due to information given to him by an agency representative. Furthermore, as the government points out, plaintiff is trained in the law and therefore should have the ability to review the relevant legal authority and draft a farm lease that complied with this authority. Plaintiff failed to do

so. Therefore, based on a review of the relevant statutory and regulatory program guidelines and the Administrative Record, the director's determination was not arbitrary, capricious, abuse of discretion, or otherwise not in accordance with law.

Plaintiff's remaining arguments are difficult to decipher but relate to the valuation of his property and his status with the Nebraska State Bar. These issues are not relevant to the Agency decision in this case and do not raise relevant issues of fact or law.

### E. Leasees

A review of the record shows that the leasees were served with process in these proceedings. However, the plaintiff raises no claims against them and they have asserted no claims in this case. Therefore, they are dismissed from this litigation.

## CONCLUSION

Based on a review of the administrative record and the filings by the parties, the court finds and concludes that the agency's determination was not arbitrary or capricious, abuse of discretion, or otherwise not in accordance with the law, and finds in favor of the defendants and against the plaintiff.

IT IS ORDERED:

1. That summary judgment is granted in favor of defendants (Filing No. 41) and against plaintiff (Filing No. 33).

2. Plaintiff's motion to allow additional time to file a reply brief (Filing No. 46) is denied as moot.

2. A separate judgment will be entered.

DATED this 11th day of December, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge